## NO. 23-1444

---

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE FEDERAL CIRCUIT

---

### GESTURE TECHNOLOGY PARTNERS, LLC,
*Appellant*

v.

### UNIFIED PATENTS, LLC,
*Appellee*

---

**Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in IPR2021-00917**

---

### RESPONSE BRIEF OF APPELLEE UNIFIED PATENTS, LLC

---

#### HAYNES AND BOONE, LLP

Debra J. McComas
David L. McCombs
2801 N. Harwood St., Suite 2300
Dallas, Texas 75201
Phone: (214) 651-5375
*Debbie.McComas@haynesboone.com*
*David.McCombs@haynesboone.com*

Angela M. Oliver
800 17th Street NW, Suite 500
Washington, D.C. 20006
Phone: (202) 654-4552
*Angela.Oliver@haynesboone.com*

Raghav Bajaj
600 Congress Avenue, Suite 1300
Austin, Texas 78701
Phone: (512) 867-8520
*Raghav.Bajaj@haynesboone.com*

*Additional Counsel Listed on Inside Cover*

**UNIFIED PATENTS, LLC**

Roshan Mansinghani
Alyssa J. Holtslander
4445 Willard Ave., Ste. 600
Chevy Chase, MD 20815
Phone: (214) 945-0200
*Roshan@unifiedpatents.com*
*Alyssa@unifiedpatents.com*

*Attorneys for Appellee, Unified Patents, LLC*

## PATENT CLAIMS AT ISSUE (Appx82)

7. Handheld computer apparatus comprising:

a housing:

a camera means associated with said housing for obtaining an image using

      reflected light of at least one object positioned by a user operating said

      object;

computer means within said housing for analyzing said image to determine

      information concerning a position or movement of said object; and

means for controlling a function of said apparatus using said information.

8. Apparatus according to claim 7, wherein said object is a finger.

9. Apparatus according to claim 7, further including a display function which is controlled.

12. Apparatus according to claim 7, further including a light source for illuminating said object.

# CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 23-1444 |
| **Short Case Caption** | Gesture Technology Partners, LLC v. Unified Patents, LLC |
| **Filing Party/Entity** | Appellee / Unified Patents, LLC |

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box.** Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: October 20, 2023          Signature: */s/ Debra J. McComas*

                              Name: Debra J. McComas

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. |
| ___ None/Not Applicable | X None/Not Applicable | _ None/Not Applicable |
| Unified Patents, LLC | | Unified Patents Acquisition, LLC |
| | | Unified Patents Holdings, LLC |

| | | Unified Patents Management, LLC |
| | | UP HOLDCO INC. |

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

 X  None/Not Applicable                    ___ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

 _ None/Not Applicable                    ___ Additional pages attached

| | | |
|---|---|---|
| Gesture Technology Partners, LLC v. Huawei Device Co., Ltd., 2:21-cv-00040 (E.D. Tex.) | Gesture Technology Partners, LLC v. Samsung Electronics Co., Ltd., 2:21-cv-00041 (E.D. Tex.) | Gesture Technology Partners, LLC v. Apple Inc., 6:21-cv-00121 (W.D. Tex.) |
| Gesture Technology Partners, LLC v. Lenovo Group Ltd., 6:21-cv-00122 (W.D. Tex.) | Gesture Technology Partners, LLC v. LG Electronics, Inc., 6:21-cv-00123 (W.D. Tex.) | Apple Inc. v. Gesture Technology Partners, LLC, No. 23-1475 (Fed. Cir.) |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

 X  None/Not Applicable                    ___ Additional pages attached

| | | |
|---|---|---|
| | | |

# TABLE OF CONTENTS

PATENT CLAIMS AT ISSUE (Appx82) ................................................................. i

CERTIFICATE OF INTEREST ........................................................................ ii

TABLE OF AUTHORITIES ..........................................................................vi

TABLE OF ABBREVIATIONS AND CONVENTIONS .................................... 1

STATEMENT OF THE ISSUES ........................................................................ 3

INTRODUCTION ...................................................................................... 4

STATEMENT OF THE CASE ........................................................................ 4

    A.    The '431 Patent is directed to the known field of human-computer interaction ...................................................... 5

    B.    Numazaki discloses the same human-computer interaction as the '431 Patent. ................................................ 7

    C.    Procedural History ............................................................... 10

SUMMARY OF THE ARGUMENT ................................................................ 13

STANDARD OF REVIEW ............................................................................ 17

ARGUMENT ............................................................................................. 18

    I.    Substantial evidence supports the Board's determination that Numazaki anticipates claim 7 of the '431 Patent. ...................... 18

        A.    Substantial evidence supports the Board's determination that Numazaki discloses claim limitation [7.2], "a camera means associated with said housing for obtaining an image using reflected light of at least one object positioned by a user operating said object." .......................................................... 20

        B.    Substantial evidence supports the Board's determination that Numazaki discloses claim limitation [7.3], "computer means within said

housing for analyzing said image to determine information concerning a position or movement of said object." ..........................................................................26

    1.    Substantial evidence supports the Board's finding that Numazaki discloses a "computer means" that "analyzes said image." ............................29

    2.    Substantial evidence supports the Board's finding that Numazaki discloses a "computer means" as defined by the Board. ....................................34

II.    The Board acted within its discretion in denying post final written decision discovery related to a separate *ex parte* reexamination proceeding. ................................................37

III.    The USPTO has jurisdiction over expired patents. ...........................39

CONCLUSION ................................................................................ 42

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adasa Inc. v. Avery Dennison Corp.*,
   55 F.4th 900 (Fed. Cir. 2022), *cert. denied*, 143 S. Ct. 2561 (2023)....................21

*Arctic Cat Inc. v. Polaris Indus., Inc.*,
   795 F. App'x 827 (Fed. Cir. 2019) (non-precedential) ......................................38

*Axonics, Inc. v. Medtronic, Inc.*,
   75 F.4th 1374 (Fed. Cir. 2023) .......................................................................... 17

*Blue Calypso, LLC v. Groupon, Inc.*,
   815 F.3d 1331 (Fed. Cir. 2016)..................................................................... 21, 34

*Boesen v. Garmin Int'l, Inc.*,
   455 F. App'x 974 (Fed. Cir. 2011) (non-precedential) ......................................32

*Cuozzo Speed Techs., LLC v. Lee*,
   579 U.S. 261 (2016)...........................................................................................40

*ePlus, Inc. v. Lawson Software, Inc.*,
   789 F.3d 1349 (Fed. Cir. 2015) .......................................................................... 41

*Fanduel, Inc. v. Interactive Games LLC*,
   966 F.3d 1334 (Fed. Cir. 2020) .......................................................................... 17

*Genentech, Inc. v. Chiron Corp.*,
   112 F.3d 495 (Fed. Cir. 1997) ............................................................................ 31

*Kennametal, Inc. v. Ingersoll Cutting Tool Co.*,
   780 F.3d 1376 (Fed. Cir. 2015) .....................................................................21, 31

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
   138 S. Ct. 1365 (2018) ................................................................................. 39, 40

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ..........................................................................40

*In re Rambus Inc.*,
   694 F.3d 42 (Fed. Cir. 2012) ............................................................ 40

*Raytheon Co. v. Sony Corp.*,
   727 F. App'x 662 (Fed. Cir. 2018) (non-precedential) ..................................... 41

*Wasica Fin. GmbH v. Cont'l Auto. Sys.*,
   853 F.3d 1272 (Fed. Cir. 2017) ................................................... 36, 37

*Wi-Fi One, LLC v. Broadcom Corp.*,
   887 F.3d 1329 (Fed. Cir. 2018) ........................................... 17, 37, 38

**Statutes**

35 U.S.C. § 112 ............................................................................ 26

35 U.S.C. § 311 ............................................................................ 39

35 U.S.C. § 316 ............................................................................ 38

**Other Authorities**

37 C.F.R. § 42.51 .......................................................................... 38

37 C.F.R. § 42.100 ........................................................................ 40

81 Fed. Reg. 18766 (Apr. 1, 2016) ....................................................... 40

## TABLE OF ABBREVIATIONS AND CONVENTIONS

**Board**            refers to the Patent Trial and Appeal Board

**Decision** or **FWD** refers to the Board's Final Written Decision (Appx1-46)

**GTP**            refers to Appellant and Patent Owner, Gesture Technology Partners, LLC

**Numazaki**        refers to US Patent No. 6,144,366

**Unified**         refers to Appellee and Petitioner, Unified Patents, LLC

**'431 Patent**     refers to US Patent No. 7,993,431

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, Appellee Unified Patents, LLC ("Unified"), states that no appeal in or from the same proceeding in the originating tribunal was previously before this or any other appellate court.

Unified further states that the following cases involve the same patent at issue in this appeal and may, accordingly, be directly or indirectly impacted by this appeal.

- *Gesture Technology Partners, LLC v. Apple Inc.*, 2023-1533 (CAFC);

- *Apple Inc. v. Gesture Technology Partners, LLC*, 2023-1475 (CAFC);

- *Gesture Technology Partners, LLC v. Apple Inc.*, 4:22-cv-04806 (NDCA);

- *Gesture Technology Partners, LLC v. Motorola Mobility LLC*, 1:22-cv-03535 (NDIL);

- *Gesture Technology Partners, LLC v. LC Electronics, Inc.*, 2:21-cv-19234 (DNJ).

## JURISDICTIONAL STATEMENT

Unified does not dispute that this Court has jurisdiction over Appellant GTP's appeal from the Board's final written decision.

## STATEMENT OF THE ISSUES

1. Does substantial evidence support the Board's determination that Numazaki anticipates claim 7 (and dependent claims 8, 9, and 12) of the '431 Patent?

2. Did the Board act within its discretion in denying discovery requested *after* the final written decision issued that related to a separate *ex parte* reexamination proceeding and had no impact on any issue in this case?

3. Does the expiration of a patent deprive the Patent Office of continued review of the patent's validity?

**INTRODUCTION**

In this *inter partes* review, the Board held claim 7 (and related dependent claims 8, 9, and 12) of the '431 Patent anticipated by Numazaki. That decision is well reasoned and is supported by substantial evidence. On appeal, GTP raises disagreement with two factual findings of the Board yet provides no basis to overturn those findings in light of the substantial evidence.

GTP also fails to show any abuse of discretion in the Board's denial of a post final written decision request for discovery related to a separate *ex parte* reexamination proceeding. Rather, recognizing that the extremely late discovery request had no bearing on the outcome of the instant case, the Board appropriately advised GTP to seek any relief in that other case.

Finally, GTP suggests that the Patent Office should have been divested of jurisdiction once the '431 Patent expired but the legal authorities do not support this suggestion. For the same reasons GTP continues to defend the viability of its patents in this appeal and asserts those patents in related lawsuits, the Patent Office and this Court have repeatedly recognized the ability to act on expired patents.

**STATEMENT OF THE CASE**

This appeal arises from a final written decision in an *inter partes* review proceeding in which the Board found claims 7-9 and 12 of the '431 Patent

unpatentable as anticipated by Numazaki. The technology relates to the well-known field of human-computer interaction.

### A. The '431 Patent is directed to the known field of human-computer interaction.

The '431 Patent is directed to enabling "rapid TV camera and computer based sensing in many practical applications, including, but not limited to, handheld devices, cars, and video games." Appx47 ('431 Patent, Abstract). The patent states that it "relates to simple input devices for computers" that operate "by optically sensing a human input to a display screen or other object and/or the sensing of human positions or orientations." Appx70 ('431 Patent, 2:7-11).

More specifically, the '431 Patent describes "a combination of one or more TV cameras (or other suitable electro-optical sensors) and a computer to provide various position and orientation related functions of use." Appx75 ('431 Patent, 11:54-58). Figure 8A illustrates this description:



*FIG. 8A*

Appx57 ('431 Patent, Fig. 8A). Figure 8A shows a cellular phone (800) using a laser spot projector (801) to project a laser spot on a detector (802) in a dashboard (803). Appx57 ('431 Patent, Fig. 8A). In other words, the '431 Patent depicts "control of functions" using a handheld device with the purpose "to add functionality to the device." Appx75 ('431 Patent, 11:62-67).

Independent claim 7 is illustrative and reads as follows:

    7.    Handheld computer apparatus comprising:

[7.1] a housing;

[7.2] a camera means associated with said housing for obtaining an image using reflected light of at least one object positioned by a user operating said object;

[7.3] computer means within said housing for analyzing said image to determine information concerning a position or movement of said objection; and

[7.4] means for controlling a function of said apparatus using said information.

Appx82 ('431 Patent, 25:61-26:5).

This type of human-computer interaction existed before the '431 Patent. Most notably, for purposes of this appeal, Numazaki disclosed each feature of the '431 Patent, including a "camera means" under limitation [7.2] and a "computer means" under limitation [7.3].

## B.    Numazaki discloses the same human-computer interaction as the '431 Patent.

Like claim 7 of the '431 Patent, Numazaki discloses an "apparatus for generating information input" using "gesture or [] motion." Appx879 (Numazaki, Abstract). More specifically, the prior art patent is directed to "a method and an apparatus for generating information input in which input information is extracted by obtaining a reflected light image of a target object." Appx981 (Numazaki, 1:8-12). As relevant to the issues on appeal, Numazaki's invention is described through a series of eight embodiments. *See* Appx985-1007 (Numazaki, 10:21-54:9).

The first embodiment is depicted by Figure 1, which (as reproduced immediately below) illustrates a block diagram for an information input generation apparatus (computer).

## FIG.1



Appx880 (Numazaki, Figure 1). Figure 1 includes a lighting unit (101), a reflected light extraction unit (102), a feature data generation unit (103), and a timing signal generation unit (104). Appx880 (Numazaki, 10:23-28). The second through seventh embodiments similarly describe variable "apparatus for generating information input." Appx989-1005 (Numazaki, 17:13-50:17).

The eighth embodiment, illustrated by Figures 74-78, discloses specifically a handheld computer like that claimed in claim 7 of the '431 Patent. For instance, Figure 78 discloses that the "device equipped with the information input generation

apparatus of the present invention" is compact so that it "can be held by one hand." Appx1006 (Numazaki, 52:5-8). In other words, Numazaki discloses a handheld computer.

FIG.78



Appx955 (Numazaki, Figure 78). The handheld device includes a window (712) for a lighting unit and a photo-detection (i.e., camera) sensor unit. Appx1006 (Numazaki, 52:12-14). Numazaki further describes the human's ability to control the position of the cursor (714) positioned on the device's screen by moving a finger (713) in front of the window (712). Appx1006 (Numazaki, 52:14-16).

Rather than repeat descriptions contained in the first seven embodiments, the eighth embodiment incorporates the input generation apparatus of the earlier embodiments. Specifically, the eighth embodiment states that it "is directed to a

system configuration incorporating the information input generation apparatus of the present invention as described in the above embodiments," including the light extraction unit and photo-detection optics described in the first embodiment. Appx1005 (Numazaki, 50:21-24).

### C.    Procedural History

Unified filed its petition for *inter partes* review of claims 7-13 of the '431 Patent based on multiple grounds and multiple prior art combinations, including (as relevant to this appeal) that the claims were anticipated by Numazaki. *See generally* Appx83-145. The Petition included a statement certifying that Unified is the real party in interest. Appx88. That statement was further supported with voluntary discovery in the form of a declaration. Appx88. In its Preliminary Patent Owner Response, GTP made a generic argument that the Board should exercise its discretion to deny review because parties in parallel litigation involving the '431 patent may be members of Unified's subscription services. *See* Appx556 (Order Denying Belated Discovery Request), *see also* Appx197-199 (POPR). But GTP did not identify who those supposed members might be. Appx556. Nor did GTP seek discovery (then or at any time during the IPR trial proceedings) related to any potentially undisclosed real parties in interest. Appx556. Indeed, GTP did not even use the term "real party in interest" in the preliminary response. Appx556.

The Board instituted *inter partes* review on November 22, 2021. Appx556.

On January 11, 2022, an *ex parte* reexamination of the '431 Patent initiated by Samsung Electronics Co., Ltd. was ordered. Appx557.

This *inter partes* review proceeding progressed without any further mention of real party in interest. And, importantly, GTP never sought discovery during the life of this proceeding related to any perceived deficiencies in the real party in interest disclosures in this case. Appx557. Instead, on October 6, 2022, more than a month *after* the oral hearing, when "[t]he record was effectively closed" (*see* Appx557), GTP asked the Board for the first time to (1) be allowed to conduct discovery from Unified regarding its relationship with Samsung and (2) terminate the separate *ex parte* reexamination proceeding initiated by Samsung. Appx557. It is not clear on this record why GTP sought discovery related to Samsung's different proceeding before the IPR panel.

Indeed, even in its belated, post oral-hearing discovery request, GTP made clear that it did not want discovery to impact the current case or delay the final decision. Appx557. Instead, it wanted to wait until after the Board issued its final written decision in this IPR proceeding and then—depending on the outcome—use any discovery potentially to effectuate termination of the separate *ex parte* reexamination proceeding filed by Samsung. Appx557.

In accordance with GTP's representation "that its request only applied after the Final Decision issued," the Board denied the request as premature. Appx557.

The final written decision issued November 21, 2022. Appx1.

Having lost the patentability challenge on the majority of its claims, GTP opted post-final written decision to renew its request for discovery related to Samsung and for termination of the separate *ex parte* reexamination proceeding. Appx557. In response, the Board directed GTP to file "any motions or petitions concerning" the *ex parte* reexamination proceeding in that proceeding, "rather than in this AIA proceeding." Appx557-558.

Rather than heed the Board's instructions to pursue any relief it deemed appropriate in the separate *ex parte* reexamination proceeding, GTP doubled down in this case by moving for reconsideration of both its request for discovery and its request to terminate the *ex parte* reexamination. Appx558.

On reconsideration, the Board reinforced its initial rejection, finding (1) that GTP's discovery request "comes too late" and was effectively waived in light of the evidence that GTP knew about the issue as early as the Patent Owner's Preliminary Response and simply chose not to pursue it (Appx558-559), (2) the discovery requests would have no impact on the closed case (ie, this IPR proceeding), where the final decision had already issued and GTP made no effort to tie the requested

discovery or relief to the current IPR proceeding (Appx559), and (3) to the extent the discovery and corresponding termination were sought with respect to the *ex parte* reexamination proceedings, GTP should raise its arguments there "rather than in this AIA proceeding" (Appx560).[1]

This appeal followed.

**SUMMARY OF THE ARGUMENT**

The Board found independent claim 7 (as well as dependent claims 8, 9, and 12) of the '431 Patent anticipated by Numazaki. Appx26. That decision is well reasoned and is supported by substantial evidence showing that Numazaki discloses each limitation of the claim(s). Appx17-26.

Specifically, the evidence reflects that Numazaki discloses a handheld computer device (preamble) that contains an external body (a housing [7.1]), a photo-detection sensor unit that extracts light using photo-detection optics and would be understood by a POSITA as a camera (the camera means [7.2]) and would be obtained by the user moving a finger (at least one object positioned by a user

---

[1] The publicly accessible docket sheet in the *ex parte* reexamination proceeding reflects that GTP never filed a discovery request in that proceeding. After the Board rejected GTP's rehearing request in this case and without any additional discovery, GTP did ultimately file a petition to terminate based on theories of estoppel. *See* Petition Filed in a Reexam dated January 10, 2023, in *Ex Parte* Reexamination No. 90/014,901. That petition remains pending as of the date of the filing of this brief.

13

operating said object [7.2]). The evidence further reflects that Numazaki discloses "feature data generation unit 103" that "performs the function of analyzing target images of an object and determining a position of the object" (computer means within said housing for analyzing said image [7.3]). And finally, Numazaki discloses using a fingertip position to control a cursor on the screen (a means for controlling a function of said apparatus using said information [7.4]). This substantial evidence more than supports the Board's determination that Numazaki anticipates the challenged claims of the '431 Patent.

On appeal, GTP challenges the substantial evidence related to two limitations of claim 7: (1) "a camera means associated with said housing for obtaining an image using reflected light of at least one object positioned by a user operating said object" [limitation 7.2] and (2) "computer means within said housing for analyzing said image to determine information concerning a position or movement of said object" [limitation 7.3]. Opening Br. 14-25. But GTP's arguments reflect nothing more than an improper attempt to recast the disputed evidence in a more favorable light.

With respect to limitation [7.2] (the "camera means" limitation), the parties agree that the limitation is met by disclosure of a camera. The crux of GTP's argument is twofold. First, GTP suggests that Numazaki cannot disclose a camera means without expressly using the term "camera," even if the reference otherwise

describes a device that a POSITA would have understood to describe a camera because it contains the same components as and performs the same functions of a camera by taking an image and storing it. The Board soundly rejected this argument in light of the substantial evidence, including expert testimony. Second, GTP similarly argues that Numazaki's eighth embodiment specifically cannot meet the camera means limitation [7.2] because that embodiment does not mention or even expressly describe a camera. But this argument ignores that the eighth embodiment incorporates the apparatus described by the previous embodiments, which further aid a POSITA in understanding the full disclosure of the eighth embodiment to include a device that takes images and stores them (i.e., a camera). Substantial evidence, therefore, supports the Board's finding that a POSITA would have understood Numazaki and specifically the eighth embodiment to disclose the camera means limitation.

With respect to limitation [7.3] (the computer means limitation), GTP's arguments appear to rest on the same incorrect presumption that absent Numazaki's use of the same terminology as the claimed invention, Numazaki cannot disclose a "computer means" that "analyzes said image." But to show anticipation, Unified needed only show that a POSITA would have understood Numazaki to disclose each limitation of the claimed invention. That standard was met here. Because substantial

evidence supports the Board's determination that Numazaki discloses limitations [7.2] and [7.3], the final written decision should be affirmed.

GTP further attempts to assign fault to the Board's denial of a discovery request brought after the final written decision issued that GTP admitted had no impact on this case. Instead, GTP sought discovery related to the potential termination of a separate *ex parte* reexamination proceeding. The Board did not abuse its discretion by telling GTP to seek relief in that separate proceeding instead of in the then-final *inter partes* review.

Finally, citing no specific authority, GTP suggests that the Patent Office lost jurisdiction to invalidate the '431 Patent once the patent expired. There is no such authority. To the contrary, this Court's prior decisions and the Patent Office regulations all anticipate post-expiration procedures involving expired patents.

There being no reversible error in the Board's decision, the final written decision should be affirmed.

## STANDARD OF REVIEW

This Court reviews the Board's legal decisions de novo and its factual determinations for substantial evidence. *Fanduel, Inc. v. Interactive Games LLC*, 966 F.3d 1334, 1343 (Fed. Cir. 2020). Unified does not dispute that anticipation is a question of fact reviewed by this Court for substantial evidence. *See* Opening Br. 13.

But GTP's appeal also challenges the Board's decision to deny a post final written decision denial of discovery related to a separate *ex parte* reexamination proceeding brought by a different party. The Board's decision whether to grant additional discovery is reviewed for an abuse of discretion. *Wi-Fi One, LLC v. Broadcom Corp.*, 887 F.3d 1329, 1338-40 (Fed. Cir. 2018). An abuse of discretion exists only if the Board's decision "(1) is clearly unreasonable, arbitrary, or fanciful; (2) is based on an erroneous conclusion of law; (3) rests on [a] clearly erroneous fact finding; or (4) involves a record that contains no evidence on which the Board could rationally base its decision." *Axonics, Inc. v. Medtronic, Inc.*, 75 F.4th 1374, 1380 (Fed. Cir. 2023) (quoting *Ericsson Inc. v. Intellectual Ventures I LLC*, 901 F.3d 1374, 1379 (Fed. Cir. 2018)).

**ARGUMENT**

I. **Substantial evidence supports the Board's determination that Numazaki anticipates claim 7 of the '431 Patent.**

The Board found independent claim 7 (as well as dependent claims 8, 9, and 12) of the '431 Patent anticipated by Numazaki. Appx26. That decision is supported by substantial evidence showing that Numazaki discloses each limitation of the claim(s). Appx17-26.

Specifically, the evidence reflects that Numazaki discloses a handheld computer device (preamble) that contains an external body (a housing [7.1]), a photo-detection sensor unit that extracts light using photo-detection optics and would be understood by a POSITA as a light camera (the camera means [7.2]) and would be obtained by the user moving a finger (at least one object positioned by a user operating said object [7.2]). Appx123 (Petition), Appx880 (Numazaki, Fig. 1), Appx881 (Numazaki, Fig. 2), Appx955 (Numazaki, Fig. 78), Appx985 (Numazaki, 10:33-35), Appx986 (Numazaki, 11:11-14), Appx1005 (Numazaki, 50:21-24), Appx1006 (Numazaki, 52:5-14), Appx735-739 (Schmandt Dec. ¶¶ 139-153). The evidence further reflects that Numazaki discloses a "feature data generation unit 103" that "performs the function of analyzing target images of an object and determining a position of the object" (computer means within said housing for analyzing said image [7.3]). Appx881 (Numazaki, Fig. 2), Appx985 (Numazaki,

10:57-61), Appx988 (Numazaki, 16:27-28), Appx989 (Numazaki, 17:19-23, 51-56), Appx1006 (Numazaki, 52:12-16), Appx739-741 (Schmandt Dec. ¶¶ 154-160). And finally, Numazaki discloses using a fingertip position to control a cursor on the screen (a means for controlling a function of said apparatus using said information [7.4]). Appx993 (Numazaki, 26:8-18, 23-25), Appx1006 (Numazaki, 52:14-16), Appx741-742 (Schmandt Dec. ¶¶ 161-165). This substantial evidence more than supports the Board's determination that Numazaki anticipates the challenged claims of the '431 Patent.

On appeal, GTP challenges the substantial evidence related to two limitations of claim 7: (1) "a camera means associated with said housing for obtaining an image using reflected light of at least one object positioned by a user operating said object" [limitation 7.2] and (2) "computer means within said housing for analyzing said image to determine information concerning a position or movement of said object" [limitation 7.3]. Opening Br. 14-25. Because substantial evidence supports the Board's determination that Numazaki discloses limitations [7.2] and [7.3], the final written decision should be affirmed.

A.    **Substantial evidence supports the Board's determination that Numazaki discloses claim limitation [7.2], "a camera means associated with said housing for obtaining an image using reflected light of at least one object positioned by a user operating said object."**

The parties agree that the "camera means" limitation can be satisfied through disclosure of a camera. Opening Br. 22 (citing Appx17); *see* Appx18 ("both parties agree that 'camera means' can be satisfied if the prior art teaches a camera"). The parties also appear to agree that a camera is "a device for obtaining an image" using a lens, sensor, and storage. Appx373 (Petitioner's Reply), Opening Br. 22 (citing same). The Board found that Numazaki discloses a handheld computer that contains a photo-detecting device directed to taking images (i.e., a camera). Appx17-22 (finding specifically that Numazaki "teaches all the aspects of the camera means claim element including a camera."). As cited above, the Board supported its determination with citations to substantial evidence. Appx17-22.

In response, GTP urges an unduly narrow standard for anticipation, criticizing the Board for failing to point "expressly" to the use of the term "camera" in Numazaki and suggesting that absent such clear "express" reference, anticipation cannot apply. *See* Opening Br. 23-24 ("Numazaki does not *expressly* state that any one term identified by the Board . . . is a camera and therefore substantial evidence does not support the Board's finding that any one term in the FWD is the 'camera

20

means' recited in claim 7 of the '431 patent.") (emphasis added). But a prior art reference "need not disclose the elements in the very same terms used by the patent." *Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 910 (Fed. Cir. 2022), *cert. denied*, 143 S. Ct. 2561 (2023) (citing *In re Gleave*, 560 F.3d 1331, 1334 (Fed. Cir. 2009)). Rather, anticipation applies where the prior art reference discloses all elements of the claim arranged in the same manner as the claimed invention. *See Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331, 1343-44 (Fed. Cir. 2016). The reference need not "expressly spell out" all the limitations in the exact same verbiage as the claimed invention to meet this standard "if a person of skill in the art, reading the reference, would 'at once envisage' the claimed arrangement or combination." *Kennametal, Inc. v. Ingersoll Cutting Tool Co.*, 780 F.3d 1376, 1381 (Fed. Cir. 2015); *see Blue Calypso,* 815 F.3d at 1343-44. That standard is met here.

As relevant to the issues on appeal, Numazaki discloses a series of eight embodiments describing an "information input generation apparatus." *See* Appx985-1007 (Numazaki, 10:21-54:9). The Petition relies on the eighth embodiment to satisfy each of claim 7's limitations. Specifically, the eighth embodiment discloses a portable handheld computer apparatus with an external housing that is controlled by the user through a touch screen system, which indisputably meets the preamble [7.0] and limitations [7.1] and [7.4] of claim 7.

The eighth embodiment also discloses a "photo-detection sensor unit" upon which Unified relies to support the camera means limitation [7.2]. Appx124 (Petition), Appx1006 (Numazaki, 52:8-14). Although Numazaki's eighth embodiment disclosure "only provides some details about" what a "photo-detection sensor unit" is or what it does (Appx18 (FWD) (citing *generally* Appx1005-1007 (Numazaki, 50:25-54:6)), it states (and the Board recognized) that the "photo-detection sensor unit" in the eighth embodiment is further "described in the above embodiments." Appx736-737 (Schmandt Dec. ¶ 147) (citing Appx1005 (Numazaki, 50:21-24), *see* Appx18 (FWD) (further citing Appx1007 (Numazaki, 53:22-36 (discussing the "photo-detection section" and then pointing to the prior discussion "as already described in detail above"))). In other words, descriptions of the first through seventh embodiments of the "information input generation apparatus" apply to the compact portable information device disclosed in the eighth embodiment.

Figure 1 and the corresponding description of the first embodiment in Numazaki are helpful in further describing the photo-detection aspects of the invention. Specifically, in describing the first embodiment, Numazaki discloses that the apparatus comprises a lighting unit (101), a reflected light extraction unit (102),

a feature data generation unit (103), and a timing signal generation unit (104). Appx985 (Numazaki, 10:23-28).

**FIG.1**



Appx880 (Numazaki, Figure 1). The "reflected light extraction unit 102" in the first embodiment "extracts the reflected light from the target object" by using "photo-detection optics 107 as further depicted in Figure 2." Appx985 (Numazaki, 10:33-35), Appx986 (Numazaki, 11:11-15), Appx736-738 (Schmandt Dec. ¶¶ 147-149).



Appx881.

Numazaki further discloses "light emitted by the lighting unit 101 is reflected by the target object 106, and **an image is formed on a photo-detection plane of the reflected light extraction unit 102 by a photo-detection optics 107.**" Appx373 (citing Appx986 (Numazaki, 11:9-19)) (emphasis original). The evidence reflects that the photo-detection optics 107 is a lens and sensor and its device includes storage. Appx372-373 (describing Numazaki's photo-detection optics 107 as a "lens"); *see also* Appx879 (Numazaki, 11:9-19) (same), Appx373 ("Numazaki's photo-detection sensor obtains an image using a lens (optics) and sensor, and its device includes storage.") (citing Appx879, Numazaki, Fig. 2), Appx1962-1963 (Schmandt Supp. Dec. ¶ 75), Appx737 (Schmandt Dec. ¶ 149), Appx1960-1961 (Schmandt Supp. Dec. ¶¶ 71, 75).

Other references in Numazaki further support the finding that one skilled in the art would have understood Numazaki's photo-detection sensor unit as directed to taking images and, thus, satisfying the camera means limitations of claim 7. For instance, Numazaki describes a "photo-detecting state" in reference to when a photo-detection unit "detects the optical image." Appx20 (citing Appx986 (Numazaki, 11:20-31, 11:38-52)). And even the eighth embodiment describes the photo-detection section as "output[ting] an image" and "stor[ing] the charges generated by the photo-electric conversion element upon photo-detecting images." Appx20 (citing Appx985, Appx1007 (Numazaki, 53:22-36, 10:33-56)).

Further, in determining that Numazaki discloses the camera means limitation, the Board acknowledged the statement from Unified's expert, Mr. Schmandt, that a person of skill in the art would have understood Numazaki's teachings of the photo-detection sensor unit to apply to infrared cameras. Appx18. Conversely, the Board rejected GTP's expert opinion that a "photo-detection sensor unit" as disclosed in Numazaki "does not *necessarily* mean that the 'photo-detection sensor unit' is or includes a camera" (Appx19 (emphasis added)), as inadequately explained and unsupported by the record evidence. The Board explained "though Patent Owner is correct that Numazaki does not explicitly say that the 'photo-detection sensor unit' is a camera, it is clear from the disclosure of Numazaki that 'photo-detecting' refers

to obtaining an image, which is what Patent Owner asserts is the function of a camera." Appx20.

Finally, in a single sentence unsupported by any record citation, GTP argues that Numazaki's photo-detection sensor unit cannot possibly disclose a camera because it does not describe a lens, which GTP identifies as "a necessary structure for a camera." Opening Br. 24. It is telling that this statement is unsupported by record citations as the record plainly identifies the lens of the photo-detection sensor described in Numazaki. *See supra* at 24.

Because there is substantial evidence to support the Board's findings that Numazaki teaches the "camera means" limitation [7.2], that determination should be affirmed.

**B.    Substantial evidence supports the Board's determination that Numazaki discloses claim limitation [7.3], "computer means within said housing for analyzing said image to determine information concerning a position or movement of said object."**

The parties and the Board agreed that limitation [7.3] is a means-plus-function limitation pursuant to 35 U.S.C. §112, ¶ 6. Appx11. Consistent with the parties' positions, the Board found (and GTP does not dispute) that the function is analyzing the image obtained in limitation [7.2] "to determine information concerning a position or movement of an object." Appx11. And the corresponding structure is "a general-purpose computer programmed with an algorithm to cause the general-

purpose computer to: (1) analyze target image(s) of an object captured by the camera means; and (2) determine the position(s) of the object" or equivalents thereof. Appx11-12. Substantial evidence supports the Board's determination that Numazaki's "feature data generation unit 103" satisfies the claimed computer means limitation of [7.3].

First, in describing Numazaki, the Board found that "Figure 1 shows an information input generation apparatus including a lighting unit (101), a reflected light extraction unit (102), **a feature data generation unit (103)**, and a timing signal generation unit (104)." Appx15 (citing Appx985 (Numazaki, 10:23)) (emphasis added). Numazaki further describes emitting light from the light emitting unit (101) and discloses that the feature data generation unit extracts information from the reflected light image. Appx22 (citing Appx125-126 (Petition), Appx985 (Numazaki, 10:57-61). A person of ordinary skill would have recognized Numazaki's "feature data generation unit 103" as *computer means within said housing,* at least because it is depicted as "coupled to a digital memory, timing control, and other control components, and is depicted within a computing device; thus, it would be recognized as corresponding to part of a general-purpose computing device, consistent with the structure of the recited computer means." Appx22 (quoting Appx739-740 (Schmandt Dec. ¶¶ 156–157)).

Consistent with this computer means, Numazaki teaches "that '[w]hen the hand is used as the target object, it is possible to capture the **information on a position** and a shape of the hand without a contact, so that it is possible to utilize the present invention as a means for inputting information." Appx22-23 (quoting Appx126 (Petition), Appx989 (Numazaki, 17:19-23)) (emphasis original); *see* Appx740-741 (Schmandt Dec. ¶¶ 158-159).

In describing the "compact portable information device" that discloses the *handheld computer apparatus*, Unified further pointed to Numazaki's eighth embodiment, including Figures 74-79. *See, e.g.*, Appx124 (Petition) ("portable information device corresponds to the eighth embodiment"), Appx984 (Numazaki, 8:31-55 (enumerating eighth embodiment's figures). Figure 74 "shows a [portable] **computer** equipped with the information input generation apparatus of the present invention." Appx952 (Numazaki, Fig. 74), Appx1005 (Numazaki, 50:25-29).



FIG.74

A different form factor is depicted in Figure 78's "compact portable information device." Appx1006 (Numazaki, 52:5-8). Thus, Numazaki's eighth embodiment, which Unified relied upon for claim 7's anticipation, expressly implements the "feature data generation unit" in a generic "computer" consistent with claim limitation [7.3]. Appx23 (citing Appx125-126 (Petition), Appx1963-1965 (Schmandt Supp. Dec., ¶¶ 76-81)).

On appeal, GTP challenges the Board's findings with respect to the "computer means" limitations on two grounds: (1) the feature data generation unit cannot satisfy limitation [7.3] because it does not analyze the specific image obtained by the photo detection sensor unit in limitation [7.2] and (2) Numazaki's "compact portable information device" does not have a "general purpose computer programmed with an algorithm" that implements Numazaki's feature data generation unit. Opening Br. 20. Once again, because there is substantial evidence to support the Board's findings, GTP's arguments should be rejected.

### 1. Substantial evidence supports the Board's finding that Numazaki discloses a "computer means" that "analyzes said image."

The bulk of GTP's argument repeats the incorrect presumption raised in its challenge to the camera means limitation [7.2]—that the Board should not have looked to the teachings of embodiments 1-7 to explain the intended scope of the

teachings of the "photo-detection sensor unit" in the eighth embodiment. Opening Br. 14-16. This argument fails for the same reasons discussed at length in part I.A. above. The eighth embodiment expressly refers back to the first through seventh embodiments for an understanding of the "information input generation apparatus", including the "photo-detection sensor unit." *See supra* at 22.

More specifically, the Board appropriately recognized that "the disclosure of the first through seventh embodiments applies to the eighth embodiment." Appx18 (citing Appx124 (Petition), Appx1005, Appx1007 (Numazaki, 50:21-24, 53:22-36 (discussing "the photo-detection section" and then pointing to the prior discussion "as already described in detail above")). The Board further explained that "[a]s will be understood from reviewing Numazaki, Numazaki discloses an eighth embodiment having a number of different portable form factors shown in Figures 74-79, but sharing 'a system configuration incorporating the information input generation apparatus of the present invention as described in the above embodiments [1-7]." Appx21 (citing Appx1005 (Numazaki, 50: 19-20)). The Board continued, "[i]n addition to referring back to prior disclosure, additional details of the information input generation apparatus including the photo-detection section are provided at [Appx1006] 52:33-54:6, which also refers back to the 'the photo-detection section . . . , as already described in detail above.'" Appx21 (FWD)

(quoting Appx1007 (Numazaki, 53:22-36). Thus, the Board properly looked to the teachings of the earlier embodiments to explain the eighth embodiment.

GTP further argues that Numazaki cannot disclose claim element [7.3] because "multiple images that are formed on the 'photo-detection plane' are simply subtracted from each other to obtain another image that Numazaki refers to as the 'reflected light image'" so that "Numazaki does not analyze an image on the 'photo-detection plane' to 'determine information concerning position or movement of said object,' as claim element [7.3] requires." Opening Br. 17. This argument fails for several reasons.

First, even if Figure 2 described filtering the image obtained by the photo-detection sensor unit (the camera means) before the image reaches the "feature data generation unit 103" (the computer means), Numazaki still anticipates claim 7. *See Kennametal*, 780 F.3d at 1382–83 (finding anticipation where claimed compounds for building and coated cemented cutting tools disclosed within a broader combination of compounds found in a prior art reference). This is particularly true where, as here, claim 7 is a comprising claim. As this Court has explained, "[c]omprising' is a term of art used in claim language which means that the named elements are essential, but other elements may be added and still form a construct within the scope of the claim." *Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997). Thus, a

31

"comprising" claim is anticipated as long as the prior art discloses each limitation of the claimed invention, even if it also discloses other steps or methods. *Boesen v. Garmin Int'l, Inc.*, 455 F. App'x 974, 977 (Fed. Cir. 2011) (non-precedential).

Here, Numazaki discloses a "feature data generation unit 103" (computer means) that analyzes the image (such as a hand) to determine information concerning a position or movement of the object (such as movements on a computer) as required by limitation [7.3]. This is adequate to show anticipation, even if Numazaki could also be read to apply other processing steps related to the image before it reaches the feature data generation unit. *Id.*

Second, GTP reads Numazaki (and specifically Figure 2) too narrowly. Numazaki explains that the "feature data generation unit **103**" (the computer means) "extracts various feature data from the reflected light image." Appx985 (Numazaki, 10:57-58). The reference provides the example quoted above of the target object of a hand, which is imaged and the data extracted to effectuate operation of a computer. Appx985 (Numazaki, 10:57-67). Figure 2 provides one example where "an image is formed on a photo-detection plane." Appx986[2] (Numazaki, 11:9-19). A reflected light image is then formed by using two photo-detection units that process

---

[2] In describing these paragraphs in the Opening Brief, GTP cites to page 991 but references column 11. *See* Opening Br. 17. This appears to be a typographical error since column 11 of Numazaki is found at Appx986.

signals **from a single image** to adjust for the lighting reflecting the object to be imaged and to exclude other lighting sources in the image. Appx986 (Numazaki, 11:20-56). The resulting reflected light image is still the same image obtained from the camera means that is the object to be positioned or moved by the computer means. In other words, the object imaged in this example was a hand and the resulting image extracted by the feature data generation unit 103 is of the same hand. *See generally* Appx22-23 (emphasis added) (quoting Appx126 (Petition), Appx989 (Numazaki, 17:19-23)) (emphasis original); *see* Appx740-741 (Schmandt Dec. ¶¶ 158-159). Accordingly, GTP's suggestion that the extracted image is different than "said image" as referenced in claim 7 is contrary to the substantial evidence.

Third, nothing in claim 7 specifically or the '431 Patent more broadly limits "said image" to a single image taken from a single camera. On the contrary, as the Board found "the '431 patent appears to expressly contemplate one or more TV cameras." Appx25 (citing Appx71 ('431 Patent, 3:25 ("A stereo pair of cameras 100 and 101"), 3:44 ("a three camera arrangement can be used"). The Board further explained that "[GTP] does not identify, and we were not able to find, any disclosure in the '431 patent that these multiple cameras are used to obtain only a single image to support Patent Owner's argument that the claim should be limited to either a single camera or a single image." Appx25. On the contrary, the substantial evidence

33

shows that the feature data generation unit 103 disclosed in Numazaki extracts information "from the reflected light image" so as to satisfy the computer means limitation [7.3] as summarized *supra* at 30-31.

None of GTP's arguments undermine the substantial evidence supporting the Board's findings that Numazaki teaches the computer means limitation [7.3]. The Board's decision should accordingly be affirmed.

### 2. Substantial evidence supports the Board's finding that Numazaki discloses a "computer means" as defined by the Board.

GTP faults the Board for allegedly failing to "explain how Numazaki's 'compact portable information device' necessarily has a 'general purpose computer programmed with an algorithm' that implements 'feature data generation unit' (the Board-identified 'computer means')." Opening Br. 21. GTP speculates that absent disclosure of the "hardware/circuitry inside Numazaki's 'compact portable information device,'" Numazaki must be deemed too ambiguous to anticipate claim 7. Opening Br. 21. This argument is both legally and factually infirm.

Legally, anticipation applies where the prior art reference discloses all elements of the claim arranged in the same manner as the claimed invention. *See Blue Calypso,* 815 F.3d at 1343-44. Claim limitation [7.3] recites a "computer means within said housing for analyzing said image." It does not claim specific hardware or

circuitry. The Board thus appropriately rejected GTP's argument that circuitry and related hardware must be disclosed as irrelevant to a proper anticipation analysis. Specifically, the Board reasoned "[t]his level of detail on how the target images are analyzed by the computer does not appear to be implicated by the current claim construction. Thus, even if true, the statement does not identify errors in the Petition." Appx26.

Factually, GTP suggests that because the "note PC" referenced in Figure 74 and the "compact portable information device" of Figure 78 are necessarily different devices, the Board erred in relying on Figure 74's note PC to find that Numazaki discloses the required "general purpose computer programmed with an algorithm" that implements the "featured data generation unit." Opening Br. at 20-21. This argument misstates both the evidence and the Board's treatment of that evidence. Figures 74-78 disclose images of multiple types of general-purpose computers, all containing an "input generation apparatus" that functions as described by the invention. *See, e.g.,* Appx1005 (Numazaki, 50:25-37 (describing Fig. 74 to include a portable computer generally called note PC)), Appx1006 (Numazaki, 51:6-15 (describing Fig. 75 as a "keyboard device equipped with the information input generation apparatus" with functions similar to the note PC described by Fig. 74),

52:5-19 (describing a compact handheld portable device that functions in the same manner as the larger note PC).

The evidence further shows that the eighth embodiment employs the "feature data generation unit 103" as depicted in Figure 2 and that the "feature data generation unit 103 "would have been recognized as *computer means within said housing*, at least because it is depicted as coupled to a digital memory, timing control, and other control components, and is depicted within a computing device; thus it would be recognized as corresponding to part of a general purpose computing device, consistent with the structure of the recited *computer means*." Appx740 (Schmandt Dec. ¶ 157). That Figure 74 describes a full-size computer while Figure 78 describes a handheld version does not detract from the fact that each figure is describing a general-purpose computer that satisfies the computer means limitation. The substantial evidence more than supports the Board's findings that "Numazaki teaches that the eighth embodiment can be implemented in a general purpose computer." Appx24.

GTP's reliance on *Wasica Fin. GmbH v. Cont'l Auto. Sys.* is misplaced. 853 F.3d 1272, 1284 (Fed. Cir. 2017). In that case, this Court simply affirmed the lower tribunal's reliance on expert testimony that a POSITA would not have understood the prior art reference so as to support a conclusion that the reference disclosed the

invention. *Id.* Here, in contrast, the substantial evidence, as found by the Board, supports the opposite finding, that a person of skill in the art would have understood Numazaki to disclose claim 7. *See* Appx20-24 and supporting evidence.

The Board's determination that Numazaki anticipates claim 7 (and dependent claims 8, 9, and 12) is supported by substantial evidence and should be affirmed.

## II. The Board acted within its discretion in denying post final written decision discovery related to a separate *ex parte* reexamination proceeding.

There is no real party in interest dispute in this IPR proceeding and, as GTP readily admits, the discovery it sought to compel below has no impact here. Instead, GTP claims it sought discovery in this proceeding to explore the possibility of raising an estoppel claim in a subsequent *ex parte* reexamination proceeding. *See* Opening Br. 26-27. The Board did not abuse its discretion in reasonably denying GTP's belated discovery request, which was admittedly irrelevant to the Board's decision— but which GTP claimed was related to a separate *ex parte* reexamination proceeding. GTP notes that its requested discovery would have no bearing on the outcome of this IPR proceeding.

As this Court has recognized, discovery in *inter partes* review proceedings is more limited than in other tribunals. *Wi-Fi One, LLC v. Broadcom Corp.*, 887 F.3d 1329, 1338–40 (Fed. Cir. 2018). And the Director of the PTO has statutory authority

to determine the scope of any discovery. 35 U.S.C. § 316(a)(5). The Board's rules provide that a party seeking additional discovery outside the normal scope and timeframe of the *inter partes* review proceeding "must show that such additional discovery is in the interests of justice." 37 C.F.R. § 42.51(b)(2)(i).

Here, the Board provided detailed reasons for why it was denying the discovery, including (1) GTP's failure to raise the issue during the life of the proceeding despite clear evidence that it was aware of the potential argument as early as the patent owner's preliminary response, (2) that the discovery requests would have no impact on the closed case, where the final decision had already issued and GTP made no effort to tie the requested discovery or relief to the current IPR proceeding (Appx559), and (3) that to the extent the discovery and corresponding termination were sought with respect to the *ex parte* reexamination proceedings, GTP should raise its arguments there, "rather than in this AIA proceeding." Appx560. GTP does not even attempt to address these findings in the Opening Brief. Under these circumstances, the Board did not abuse its discretion in denying the requested additional discovery. *Wi-Fi One*, 887 F.3d at 1338-40; *see Arctic Cat Inc. v. Polaris Indus., Inc.*, 795 F. App'x 827, 831-32 (Fed. Cir. 2019) (non-precedential) (affirming the Board's denial of supplemental discovery where the movant failed to establish that the information could not be obtained through other means).

## III.    The USPTO has jurisdiction over expired patents.

Congress created the Patent Trial and Appeal Board to preside over requests to "cancel as unpatentable 1 or more claims of a patent . . . ." pursuant to the *inter partes* review process. 35 U.S.C. § 311(b). Section 311 permits the filing of an *inter partes* review proceeding after the later of either (1) 9 months after the grant of a patent or (2) termination of a post-grant review. *Id.* (c). There is no end date from which a party may seek *inter partes* review. The statute does not limit the procedure to unexpired patents.

There is no basis to support the conclusion that the USPTO loses jurisdiction to review an expired patent, especially where (as here) the patent owner is continuing to assert its patent against parties.

First, the Supreme Court's decision in *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365 (2018) does not support GTP's position. In *Oil States*, the Supreme Court addressed whether the PTAB had jurisdiction to conduct *inter partes* review of *any patents at all*, not just unexpired patents. *Id*. at 1372 (the patent owner "challenged the constitutionality of inter partes review" as a whole). The Court held that the PTAB did have jurisdiction to conduct *inter partes* review because, "[a]s a public franchise, a patent can confer only the rights that the statute prescribes." *Id.* at 1375. As a result, a patent is "a creature of statute law,"

and Congress has the authority to both expand and limit the rights of a patent by statute. *Id.* at 1374. *Oil States* simply does not address the USPTO's extended jurisdiction over an expired patent.

Second, in interpreting the PTAB's regulations, this Court has repeatedly recognized jurisdiction beyond the expiration date of the patent. Specifically, the PTAB's own regulations support review beyond the life of the patent. Indeed, until November 13, 2018, the PTAB applied the broadest reasonable interpretation standard to claims subject to *inter partes* review. *See Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 261 (2016) (citing 37 C.F.R. § 42.100(b) (as amended at 81 Fed. Reg. 18766, Apr. 1, 2016)). For expired patents, however, there was a well-established exception. Prior to the 2018 change, § 42.100(b) read "[a] claim *of an unexpired patent* that will not expire before a final written decision is issued shall be given its broadest reasonable construction" (emphasis added).

This Court interpreted this prior version of 37 C.F.R. § 42.100(b) to mean that the claims of expired patents and soon-to-expire patents were to be given their "ordinary and customary meaning"—the *Phillips* standard. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005); *see also In re Rambus Inc.*, 694 F.3d 42, 46 (Fed. Cir. 2012) ("While claims are generally given their broadest possible scope during prosecution, the Board′s review of the claims of an expired patent is similar

40

to that of a district court's review." (cleaned up) (citing *Ex Parte Papst–Motoren*, 1 U.S.P.Q.2d 1655, 1655–56 (B.P.A.I. Dec. 23, 1986); MPEP § 2258)). This Court has recognized that difference on multiple occasions, including in at least one case where "[t]he patent expired before the IPR proceedings at issue were initiated." *Raytheon Co. v. Sony Corp.*, 727 F. App'x 662, 664 (Fed. Cir. 2018) (non-precedential).

Third, GTP argues that the Patent Office must not have jurisdiction over expired patents because, otherwise, it would "purport to have authority to retroactively modify a public franchise that no longer exists." Opening Br. 29. GTP presents this retroactive authority as a sort of absurd outcome to prove that the USPTO cannot possibly have jurisdiction over expired patents. But, contrary to GTP, the Patent Office already has precisely that authority. When a patent claim is cancelled through *inter partes* review, its effect is not only prospective, but cancels the claim retroactively. "[T]he cancellation of a patent requires that non-final judgments be set aside because the cancelled claims are void *ab initio*." *ePlus, Inc. v. Lawson Software, Inc.*, 789 F.3d 1349, 1358 (Fed. Cir. 2015) (quoting *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1337 (Fed. Cir. 2013) (cleaned up). GTP has not shown any reason why this principle should not apply to expired patents as well as unexpired patents.

41

## CONCLUSION

For the foregoing reasons, Unified urges this Court to affirm the final written decision.

Dated: October 20, 2023

Respectfully Submitted,

**HAYNES AND BOONE, LLP**

*/s/ Debra J. McComas*
Debra J. McComas
David L. McCombs
2801 N. Harwood St., Suite 2300
Dallas, Texas 75219
Phone: (214) 651-5375
*Debbie.McComas@haynesboone.com*
*David.McCombs@haynesboone.com*

Raghav Bajaj
600 Congress Avenue
Suite 1300
Austin, Texas 78701
Phone: (512) 867-8520
*Raghav.Bajaj@haynesboone.com*

Angela M. Oliver
800 17th Street NW, Suite 500
Washington, D.C. 20006
Phone: (202) 654-4552
*Angela.Oliver@haynesboone.com*

**UNIFIED PATENTS, LLC**
Roshan Mansinghani
Alyssa J. Holtslander
4445 Willard Ave., Ste. 600
Chevy Chase, MD 20815
Phone: (214) 945-0200
*Roshan@unifiedpatents.com*
*Alyssa@unifiedpatents.com*

**Attorneys for Appellee, Unified Patents, LLC**

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Fed. Cir. R. 32(b)(1) because:

■     this brief contains **7,604** words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).

2.     This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6) because:

■     this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Equity font.

*/s/ Debra J. McComas*
Debra J. McComas